# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

OZSTAR DE JOURDAY,

                Plaintiff,

   vs.

JP MORGAN CHASE BANK, N.A., etc.,
et al.,

                Defendants.

CASE NO. 11cv1052-LAB (MDD)

**ORDER GRANTING
DEFENDANTS' MOTION TO
DISMISS**

De Jourday filed this action to set aside the foreclosure of his home and to enjoin JP Morgan from initiating an unlawful detainer action against him.

## I.    Factual Background

In December, 2006 De Jourday borrowed money from Washington Mutual Bank to buy a home in La Jolla.  The loan was secured by a deed of trust on the home, and the deed identified Washington Mutual as the lender.  (Dkt. Nos. 8-2, 8-3.)  At some point in 2009, De Jourday fell behind on his loan payments, and on September 30, 2009 a notice of default was recorded.  (Dkt. No. 8-5.)  That notice informed De Jourday that his past due payments totaled $96,369.27 as of September 29, 2009.  It also instructed him to contact JP Morgan Chase Bank—*not* Washington Mutual, his lender—with any questions about the amount due or to arrange for payment to stop a foreclosure.

//

1    Several months later, on April 28, 2010, a notice of trustee's sale was recorded.

2  (Dkt. No. 8-6.)  It informed De Jourday that on May 27, 2010 Washington Mutual—*not* JP

3  Morgan—would sell his home at a public auction to highest bidder.  At this point, with the

4  loss of his home imminent, De Jourday attempted to negotiate a loan modification with JP

5  Morgan.  He failed, and then unsuccessfully filed for bankruptcy under Chapter 11 and

6  Chapter 13.  He then filed for bankruptcy under Chapter 7 on December 30, 2010.  On

7  January 5, 2011, De Jourday's home was sold to JP Morgan in a public auction.[1]  (Dkt. No.

8  8-7.)  The trustee's deed upon sale listed the unpaid debt with costs as $2,125,532.28 and

9  the sale price as $1,204,200.00.

10    On February 4, 2011, De Jourday's Chapter 7 counsel sent to JP Morgan a qualified

11  written request pursuant to the Real Estate Settlement Procedures Act requesting proof of

12  JP Morgan's right to title of De Jourday's home.  (Dkt. No. 8-9.)  De Jourday alleges in his

13  complaint that JP Morgan "did not respond and in fact denied any obligation to respond."

14  (Compl. ¶ 17.)  On February 25, 2011, JP Morgan sought relief from the stay in De Jourday's

15  bankruptcy case, which was granted on March 25, 2011 over De Jourday's objection that JP

16  Morgan had to produce evidence of its right to title.  (Compl. ¶ 18.)

17  **II.    Claims**

18    De Jourday asserts two claims against JP Morgan.  The first claim alleges that JP

19  Morgan violated RESPA by not responding to De Jourday's qualified written request.  Rather

20  than respond, De Jourday alleges, JP Morgan filed a motion for relief from De Jourday's

21  bankruptcy stay, which De Jourday incurred legal fees opposing, in which it denied any

22  obligation to respond.  The second claim alleges that the foreclosure and sale of De

23  Jourday's home was wrongful.  The legal authority for this claim is unspecified, but the stated

24  bases for it are threefold: (1) De Jourday "has never received any notice from JP Morgan

25  that the mortgage he held with WAMU was purchased and assigned to JP Morgan"; (2) JP

26  Morgan "willfully refused to work with Plaintiff in modifying his loans with the intent to sell the

27  //

28

[1] Or so De Jourday alleges.  The nature of the "sale" is actually unclear to the Court.

1  Property at auction"; and (3) De Jourday's home was sold for "a grossly inadequate price."

2  (Compl. ¶¶ 26–27.)

3  **III.   Legal Standard**

4         A rule 12(b)(6) motion to dismiss for failure to state a claim challenges the legal

5  sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).   In

6  considering such a motion, the Court accepts all allegations of material fact as true and

7  construes them in the light most favorable to De Jourday.  *Cedars-Sinai Med. Ctr. v. Nat'l*

8  *League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007).  To defeat a 12(b)(6)

9  motion, a complaint's factual allegations needn't be detailed, but they must be sufficient to

10  "raise a right to relief above the speculative level . . . ."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

11  544, 555 (2007).  However, "some threshold of plausibility must be crossed at the outset"

12  before a case can go forward.  *Id.* at 558 (internal quotations omitted).  A claim has "facial

13  plausibility when the plaintiff pleads factual content that allows the court to draw the

14  reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.*

15  *Iqbal*, 556 U.S. —, 129 S.Ct. 1937, 1949 (2009).  "The plausibility standard is not akin to a

16  'probability requirement,' but it asks for more than a sheer possibility that a defendant has

17  acted unlawfully."  *Id.*

18         While the Court must draw all reasonable inferences in De Jourday's favor, it need

19  not "necessarily assume the truth of legal conclusions merely because they are cast in the

20  form of factual allegations."  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th

21  Cir. 2003) (internal quotations omitted).  In fact, the Court does not need to accept any legal

22  conclusions as true.  *Iqbal*, 129 S.Ct. at 1949.  A complaint does not suffice "if it tenders

23  naked assertions devoid of further factual enhancement" (*Id.* (internal quotations omitted)),

24  nor if it contains a merely formulaic recitation of the elements of a cause of action.  *Bell Atl.*

25  *Corp.*, 550 U.S. at 555.

26  //

27  //

28  //

1   **IV.    Discussion**

2       The Court will address De Jourday's claims separately.

3       **A.    RESPA Claim**

4       RESPA mandates that loan servicers who receive a "qualified written request" from

5   a borrower for information relating to a loan "provide a response acknowledging receipt of

6   the correspondence within 20 days."  12 U.S.C. § 2605(e)(1)(A).  A qualified written request

7   is a written correspondence that

8               (I) includes, or otherwise enables the servicer to identify, the
                name and account of the borrower; and
9
                (ii) includes a statement of the reasons for the belief of the
10              borrower, to the extent applicable, that the account is in error or
                provides sufficient detail to the servicer regarding other
11              information sought by the borrower.

12   12 U.S.C. § 2605(e)(1)(B).

13       JP Morgan first challenges that De Jourday's February 4, 2011 letter even counts as

14   a "qualified written request" because his complaint does not allege that the letter "properly

15   identified the borrower information or (2) actually identified an error in the account to the

16   servicer as required . . . ."  (Dkt. No. 9-1 at 5.)  *See Walker v. Equity 1 Lenders Group*, 2009

17   WL 1364430 at *5 (S.D. Cal. Mar. 14, 2009) ("A qualified written request must enable the

18   servicer to identify the name and account of the borrower, and include a statement of the

19   reasons for the belief of the borrower that the account is in error.")  De Jourday's letter,

20   which he referenced in and attached to his complaint, clearly provided his name and loan

21   number in compliance with § 2605(e)(1)(A)(I).  And while it didn't identify an error in his

22   account under § 2605(e)(1)(A)(ii), it did seek "other information," namely proof of JP

23   Morgan's right to title.  JP Morgan is right that De Jourday's complaint doesn't allege the

24   "sufficient detail" he provided to JP Morgan regarding this information, but it is plain for the

25   Court and JP Morgan to see in the letter itself.  The Court therefore rejects the argument that

26   De Jourday has failed to properly allege that he sent JP Morgan a qualified written request.

27       This does not mean that De Jourday's RESPA claim is safe from dismissal.  He

28   cannot recover *statutory* damages—although it is not clear he seeks them—because he has

not alleged a "pattern or practice of noncompliance" with § 2605(e)(1)(A). *See* 12 U.S.C. § 2605(f)(1)(b). He does seek actual damages of $350, however. This is the amount he paid his bankruptcy counsel to oppose JP Morgan's motion for relief from the bankruptcy stay. De Jourday claims he would not have opposed the motion if JP Morgan had responded to his qualified written request:

> Had JP Morgan provided Plaintiff with documentation showing their right to title, Plaintiff would have no argument to pose in opposition to JP Morgan's Motion for Relief. With no documentation responding to Plaintiff's QWR, Plaintiff had to oppose the motion for relief and to pay additional attorneys fees in the approximate amount of $350.00 to his bankruptcy attorney opposing on the grounds that JP Morgan had no right to foreclose on the Property.

(Compl. ¶ 22.)

JP Morgan argues that the cost of preparing a legal pleading cannot qualify as "damages" under RESPA, but it cites no legal authority for this proposition and the Court can't find any. The caselaw simply holds that a RESPA plaintiff must demonstrate "pecuniary loss," but it doesn't set clear limits on the nature or source of that loss. *See, e.g.*, *Obot v. Wells Fargo Bank, N.A.*, 2011 WL 5243773 at *3 (N.D. Cal. Nov. 2, 2011) (recognizing split on question whether "actual damages" under RESPA encompasses emotional distress); *Beall v. Quality Loan Serv. Corp.*, 2011 WL 2784594 at *5 (S.D. Cal. July 15, 2011) (insisting that a RESPA plaintiff plead actual damages in the form of pecuniary loss). Courts have held that the cost of bringing a RESPA lawsuit is insufficient actual damage for a RESPA claim, *see Lal v. Am. Home Serv., Inc.*, 680 F.Supp.2d 1218, 1223 (E.D. Cal. 2010), but the legal costs incurred as a result of the failure to respond to a qualified written request are distinguishable.

JP Morgan doesn't deny that it failed to respond to De Jourday's letter, nor does it deny that it had any obligation to. Its sole argument is that De Jourday can't allege the damages that his RESPA claim needs in order to breathe. The fate of the claim comes down to De Jourday's representation that he wouldn't have opposed JP Morgan's request

///

1   for relief from the bankruptcy stay if JP Morgan had responded to the letter.[2]  The Court

2   rejects this representation for two reasons.  First, the stay never went into effect in De

3   Jourday's bankruptcy, presumably because his two successive bankruptcy cases were

4   dismissed.  *See* 11 U.S.C. § 362(c)(4)(A)(I).  This means JP Morgan's request for relief was

5   meaningless, as was De Jourday's opposition.  Apparently neither party realized there was

6   no stay in place, but JP Morgan isn't responsible for essentially duping De Jourday into the

7   mistaken belief that he had to oppose the motion.  De Jourday was represented by

8   competent bankruptcy counsel; that counsel should have recognized the stay never went

9   into effect or would not go into effect.  Second, De Jourday's story doesn't line up with the

10   rest of his complaint.  He asks the Court to believe that had JP Morgan responded to his

11   qualified written request, he would have rolled over and let JP Morgan foreclose on his

12   home. (Compl. ¶ 22.) But that is not true.  In his complaint, De Jourday alleges a wrongful

13   foreclosure based on: (1) inconsistencies in the notice of default and notice of trustee's sale

14   regarding the true holder of the title to his property; (2) JP Morgan's alleged unwillingness

15   to negotiate a loan modification; and (3) the trustee's sale of his home for a "grossly

16   inadequate price." (Compl. ¶¶ 26–27.) All of these things *preceded* De Jourday's qualified

17   written request and JP Morgan's motion for a relief from the bankruptcy stay.  The fact is that

18   De Jourday has gone to great pains to stay in his home.  The representation that he would

19   have stepped aside while JP Morgan intervened in his bankruptcy to foreclose on him

20   doesn't square with these pains, nor does it square with the other allegations in his

21   complaint.

22        For the above reasons, De Jourday's RESPA claim is **DISMISSED WITH**

23   **PREJUDICE**.

24   _____

25        [2] According to De Jourday, JP Morgan filed a motion for relief from the stay in his
    bankruptcy case, which implies that there was a stay in effect. (Compl. ¶ 18.) According to
26   JP Morgan, however, it filed a "Motion for Relief from Plaintiff's request for a Stay of the
    foreclosure proceedings," which implies that De Jourday sought a stay of a particular legal
27   proceeding, which JP Morgan opposed. (Dkt. No. 9-1 at 5.)  In any event, JP Morgan
    prevailed because there was never a stay in effect. (Dkt. No. 9-4 at p. 58.)  The bankruptcy
28   court held that "[t]he relief from stay motion is denied as moot since there is no automatic
    stay in effect in this case." (*Id.*)

1

### B.   Wrongful Foreclosure

2   De Jourday's wrongful foreclosure claim is perplexing because the legal bases of it

3   are unclear in his complaint.  He cites irregularities in the notice of default and notice of

4   trustee's sale regarding the true holder of the title to his home, but he does not explain how

5   those irregularities prejudiced him or why they are a legal violation.  He complains that JP

6   Morgan refused to negotiate a loan modification, but he does not identify any statutory or

7   contractual obligation it had to do so.  He alleges that his home was sold for a "grossly

8   inadequate price," but he does not explain why this renders the sale unlawful or otherwise

9   illegitimate.[3]

10   The core charge—and the only charge intelligible to the Court—appears to be that JP

11   Morgan has no right to foreclose on De Jourday's home because it hasn't properly

12   demonstrated that it is the rightful holder of the deed of trust:

13
14
15
16
> As a subsequent beneficiary of the DOT, Defendant's [sic] should be required to show that the rights and duties of Plaintiff's DOT were assigned to Defendant's [sic] by a duly executed instrument.  Without such instrument, Plaintiff contends that Defendant lacked the authority to commence foreclosure thus making it a wrongful foreclosure.

16
17
18
> Plaintiff is not requesting the original note be produced but rather is requesting Defendant provide documentation showing the power of sale found in Plaintiff's Deed of Trust was property [sic] assigned to Defendants as required under CCP § 2932.5.

19   (Dkt. No. 10 at 4.)  Section 2932.5 provides:

20
21
> Where a power to sell real property is given to a mortgagee, or other encumbrancer, in an instrument intended to secure the

22   ———————————————

23   [3] The Court passes over—without definitively rejecting—JP Morgan's argument that
De Jourday lacks standing to challenge the foreclosure because he has not tendered the
balance of the loan.  JP Morgan cites *Alicea v. GE Money Bank*, which holds that "[w]hen
24   a debtor is in default of a home mortgage loan, and a foreclosure is either pending or has
taken place, the debtor must allege a credible tender of the amount of the secured debt to
25   maintain any cause of action for wrongful foreclosure."  2009 WL 2136969 at *3 (N.D. Cal.
July 16, 2009).  *Alicia* also suggests, however, that merely *offering* to tender the balance of
26   the loan will suffice.  *Id.* ("Nor does Plaintiff indicate in her Opposition that she is prepared
to cure the deficiency in the Complaint by making the offer of tender.")  De Jourday does
27   make that offer in his complaint, and he makes it again in his opposition brief.  (Compl. ¶ 28;
Dkt. No. 10 at 3.)  *But see United States Cold Storage v. Great Western Savings & Loan
28   Assn.*, 165 Cal.App.3d 1214, 1222 (1st Dist. 1985) ("[T]he law is long-established that a
*trustor* or his successor must tender the obligation in full as a prerequisite to challenge of the
foreclosure sale.").

1
2
3

> payment of money, the power is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument.  The power of sale may be exercised by the assignee if the assignment is duly acknowledged and recorded.

4   In other words, De Jourday's grievance is that § 2932.5 obligates JP Morgan to prove that

5   Washington Mutual assigned to it the deed of trust on his home, which contained the power

6   of sale.

7          "It has been established since 1908 that this statutory requirement that an assignment

8   of the beneficial interest in a debt secured by real property must be recorded in order for the

9   assignee to exercise the power of sale applies only to a mortgage and not to a deed of trust."

10   *Calvo v. HSBC Bank USA, N.A.*, 199 Cal.App.4th 118, 122 (2d Dist. 2011).  The plaintiff in

11   *Calvo* argued, like De Jourday, that a foreclosure sale should be set aside because the

12   seller, HSBC Bank, "invoked the power of sale without complying with the requirement of

13   section 2932.5 to record the assignment of the deed of trust from the original lender to

14   HSBC bank."  *Id.* at 121.  The court found "no merit in this contention."  *Calvo* is fatal to De

15   Jourday's wrongful foreclosure claim.  Moreover, the explanation for the "irregularities" in his

16   notice of default and notice of trustee's sale is simple: in the time between the initiation of

17   De Jourday's mortgage and his delinquency on his payments, Washington Mutual collapsed,

18   was shut down by the federal government, and certain of its assets and liabilities were

19   acquired by JP Morgan.  (Dkt. No. 9-4 at p. 63.)[4]

20          De Jourday's wrongful foreclosure claim is **DISMISSED WITH PREJUDICE**.

21   //

22   //

23   //

24   _____

25          [4] De Jourday's lingering arguments about the flaws of the foreclosure are rebutted by
26   *Farner v. Countrywide Home Loans*, 2009 WL 189025 (S.D. Cal. 2009) and *Gomes v. Countrywide Home Loans, Inc.*, 192 Cal.App.4th 1149 (2011), both of which are cited by JP
27   Morgan.  *Farner* recognized that the original deed of trust needn't be produced in order to render a foreclosure valid.  *See also Baidoobonso-Iam v. Bank of Am.*, 2011 WL 5870065
28   at *3 (C.D. Cal. Nov. 22, 2011) (discussing requirements for initiating non-judicial foreclosure).  *Gomes* rejected a borrower's action to  determine whether the party initiating a foreclosure was authorized to do so.

**V.      Conclusion**

De Jourday has not alleged sufficient facts to support a RESPA violation, or to support his claim that the foreclosure on his home was wrongful.  Both claims are therefore **DISMISSED WITH PREJUDICE**.  Necessarily, De Jourday's request for injunctive relief is **DENIED**.

**IT IS SO ORDERED**.

DATED:  December 16, 2011

_Larry A. Burns_

**HONORABLE LARRY ALAN BURNS**
United States District Judge