# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OZSTAR DE JOURDAY,<br><br>　　　　　　　　　　　Plaintiff,<br>vs.<br><br>JP MORGAN CHASE BANK, N.A., etc., et al.,<br><br>　　　　　　　　　　　Defendants. | CASE NO. 11cv1052-LAB (MDD)<br><br>**ORDER DENYING MOTION FOR AN EXTENSION OF TIME TO APPEAL** |

The Court previously denied without prejudice De Jourday's motion for an extension of time to appeal the dismissal of his claims. The denial was without prejudice because the Court wanted to hear more from De Jourday about how, exactly, he missed the deadline to appeal.

To review, the Court granted JP Morgan's motion to dismiss on December 16, 2011, giving De Jourday until January 15, 2012 to file a notice of appeal. He missed that deadline, and then on February 7, 2012 filed the pending motion. De Jourday's original explanation for missing the deadline was that his original lawyer, Fanny Cherng, didn't mention a deadline, and he continued to negotiate a settlement with JP Morgan, anyway, under the assumption that he'd reach one and no appeal would be necessary.

De Jourday now adds that he didn't think about appealing the Court's order until a conversation with his father in mid-January 2012, probably around the time that his deadline

to appeal passed. (De Jourday Decl. ¶ 6.) Pretty quickly, he started contacting appellate lawyers, the first of whom, on January 21, 2012, told him he'd missed the deadline. (De Jourday Decl. ¶ 7–8.) De Jourday's story is largely corroborated by Ms. Cherng, who admits that in her conversations with De Jourday after the Court dismissed his claims she never mentioned a 30-day deadline to appeal. (Cherng Decl. ¶¶ 5, 7.) She also confirms that even after the Court granted JP Morgan's motion to dismiss, she continued to negotiate a settlement on De Jourday's behalf. (Cherng Decl. ¶¶ 4, 6.)

There are still a couple of discrepancies. First, Ms. Cherng claims she was negotiating with JP Morgan "through most of January 2012." (Cherng Decl. ¶ 6.) According to JP Morgan, negotiations didn't last nearly that long. Rather, it proposed a settlement to Ms. Cherng on December 20, 2011, she requested some changes on December 29, those changes were rejected on January 3, 2012, and Ms. Cherng didn't respond until *the end of the month*, after JP Morgan sent De Jourday a notice to vacate. (Dillon Decl. ¶¶ 3–6.)

Second, De Jourday claims he learned of the appeal deadline on January 21, 2012 from the first appellate attorney he contacted, Timothy Branson at Gordon & Rees. (De Jourday Decl. ¶¶ 7, 9.) But according to Ms. Cherng, De Jourday asked her how long he had to appeal on or around January 23, 2012, after twice being told she did not handle appeals. (Cherng Decl. ¶ 8.) If De Jourday indeed got the idea to appeal in a conversation with his father in mid-January 2012 (De Jourday Decl. ¶ 6), at which point he immediately contacted Ms. Cherng on January 11 to discuss an appeal (De Jourday Decl. ¶ 6; Cherng Decl. ¶ 7) and then turned his focus to finding an appellate lawyer, this doesn't add up. De Jourday and Ms. Cherng allow for some movement in the dates by prefacing them with "On or about," but the story here still seems either incomplete or confused. The Court is also perplexed by Ms. Cherng's claim that when she offered to look up the appeal deadline for De Jourday on January 23, 2012, he said that wasn't necessary. (Cherng Decl. ¶ 8.)

As the Court explained in its previous order, De Jourday must show excusable neglect or good cause before the Court can extend his time to appeal. Fed. R. App. P. 4(a)(5). The Court considers the following factors in determining whether De Jourday has made that

showing: (1) the danger of prejudice to the non-moving party; (2) the length of delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the moving party's conduct was in good faith. *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993). Excusable neglect is an elastic concept that's better committed to the Court's discretion than some set of per se rules. *Pincay v. Andrews*, 389 F.3d 853, 860 (9th Cir. 2004).

There is some prejudice to JP Morgan here. Not only will it have to defend an appeal weeks after it was assured this case was over, but the record now shows that it served De Jourday with a notice to vacate after his deadline to appeal passed, presumably with plans to move on his home. The length of delay here cuts slightly in De Jourday's favor. His deadline to appeal fell on January 15, 2012, he learned of the deadline (he claims) just one week later, and he then made a diligent effort to locate appellate counsel. The reason for the delay? The Court now has confirmation that JP Morgan continued to negotiate with De Jourday after the Court dismissed his claims *and* that his trial counsel, Fanny Cherng, never mentioned an appeal deadline to him, but there are still some holes in his story that undermine it. The last question is whether De Jourday is acting in good faith. He says he is (De Jourday Decl. ¶ 9), but the evolution of his story and the history of this case—an attempted loan modification, two bankruptcies, and then a "produce the note" lawsuit—leave the Court with doubts.

Finally, the manner in which De Jourday speaks of appealing the Court's order dismissing his claims suggests that he conceives of an appeal as simply the next legal maneuver when one doesn't prevail at the district court level. (De Jourday Decl. ¶ 6 ("I got the idea that perhaps I could appeal the Court's December 16, 2011 Order . . . in the event that I was unable to settle with Defendant.").) But an appeal isn't to be taken simply as a matter of course; it's to be taken out of a sincere belief that the district court got the law or the facts wrong. To review, the Court's rather straightforward dismissal of De Jourday's RESPA claim deprived him of $350 in actual damages and, potentially, his attorney's fees.

And the Court found no merit whatsoever to De Jourday's wrongful foreclosure claim. The Court doesn't mean to be arrogant here. There is always the chance that it misinterprets or misapplies the caselaw. In this case, however, the decision to dismiss De Jourday's claims was not very complicated, and the Court does not sense in the least that De Jourday truly believes his claims are righteous and wants to pursue them further. This informs the Court's view of whether De Jourday is acting in good faith.

Taking all of the *Pioneer* factors into account here, the Court does not find excusable neglect here. De Jourday may lack legal training, but he is a sophisticated realtor in a sophisticated San Diego neighborhood. People without legal training still know that appealing a court's decision is always an option, and from that they can be expected to intuit that there's a limited window within which to do so. De Jourday's motion for an extension of time to appeal is therefore **DENIED**.

**IT IS SO ORDERED**.

DATED: April 14, 2012

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge